Council for the appellant, are you prepared? Please proceed. May it please the court, Mr. Chief Justice. My name is John Nowak. I'm an assistant state's attorney from Cook County, and I represent the people of the state of Illinois in this case. These defendants committed burglary when they entered this vehicle with intent to commit theft. When they punched that lock, they grabbed the window and ripped it from the frame of that SUV. When they grabbed that window, they necessarily had to enter that vehicle because they both grabbed both the outside and the inside of that window. The standard of review is well settled. It's whether after viewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements beyond a reasonable doubt. It is the trier of facts' responsibility to draw reasonable inferences from basic facts to ultimate facts. And it's the reviewing court must allow all reasonable inferences in favor of the prosecution. The trier of fact is not required to accept any possible explanation compatible with defendant's innocence and elevate it to the level of reasonable doubt. This court has explained that where evidence is presented and is capable of producing conflicting inferences, it is best left for the trier of fact to make that proper resolution. Counsel, you indicated at the outset that punching the lock, was that the entry? That combined with grabbing the window. But can we tell by the record whether that window, if it swings up and out, that is if it's now outside of the vehicle, is there the fact that fingerprints are on what would have been the inside of the vehicle at any moment because that window is now outside the vehicle? Your Honor, punching the lock itself is an entry because we also have, he didn't just punch it, we also have additional evidence to show that that's what his intent was. When he grabbed that window, it wasn't outside the vehicle. It's still part of the vehicle. It's akin to a door being opened. That inside of the window is still part of the interior of the vehicle. He doesn't get a free pass because he punches the lock and he's able to get that window up. But he, in order to remove it, he did more than just, it didn't pop off when he punched that lock. It was torn from the hinges. It was torn from the hydraulic arms. And when he grabbed the inside, even if it has come up a little bit so he can get his fingers in there, that's still the interior of the vehicle. There's an outside of the window and an inside. And by grabbing that inside, that's an entry. The appellate court actually recognized. Did you present any evidence to that effect? Did the State present any evidence? As to? I mean, you're saying that he had to grab the inside of the window to pull it out. And I'm just, you know, my basic question is, was any evidence prevented that defendants actually had to enter the vehicle to remove the window? Or are we basing this most on inference and common sense? Well, there's no direct evidence. So it's circumstantial. And the inference, of course, the drier fact made, and it's a reasonable one, is that in order to remove a window from a vehicle, you necessarily have to grab both sides. As Justice Garcia noted in the dissent, the only way you could remove a window without touching the inside of the window would be to use some sort of suctioning device. And it's simply not a reasonable inference based on these facts. Can we tell from the record whether the punching of the lock released the rear window or not? We can tell. The victim testified that when that is unlocked and pressed, that that allows the window to raise up with the hydraulic arms. So by punching the lock, based on her testimony that that's what allows the window to swing up, that that allowed them at least to gain at least some entry to get their hands on to the window in order to grab it. So in order, because she testified that the window was locked. The window was locked. It was closed when she left her vehicle. And so in order, when they punched the vehicle, presumably the inference is that the window came up somewhat. But they grabbed it. And the only way they could remove it is to reach inside and grab both the interior and the exterior. Mr. Novick, if that's true, then if a person jimmied opened a screen door to a house, then grabbing only the door ripped it off the hinges, would that be an entry as well? Rip the door off the hinges? Yes. Yes, because if there's an interior door, you punch it and you're able to get the door to open a little bit and you grab it, you've broken the plane. You've reached inside. You're grabbing that door. The interior of the door is inside the house, just like this interior of the window is inside the vehicle. When you grab inside. But according to your answer to Justice Tice, the window came open, which would probably, to me, take it away from the close of the car. The victim, nobody testified because there's no direct evidence as to what happened when they punched that lock. Oh, so you don't know whether or not the window came up? We know that the witness, the victim testified that when it's operating normally, you unlock it and that allows the window to swing up. But it doesn't allow it to pop off the vehicle. It doesn't just fall off. Is there any significance to the fact the hinges were dangling on the outside of the vehicle? There is, Your Honor, because it shows that this window, when they punched the lock, it didn't just pop off and land on the ground. It did more than that. They had to physically remove it, and it shows, given the damage the testimony showed to those hinges, to those hydraulic arms, that they needed to use quite a bit of force in order to rip that large window. It's four feet by three feet to rip that off from the vehicle. Does the record show whether the hinges were on the inside or the outside? According to the victim's testimony and the inference the trial court expressly made, they were on the inside. Her testimony was that the hydraulic arms would lift it up and hold up the window. And the trier of fact found that that testimony led to the inference that, indeed, they were on the inside. And the appellate court in the majority came up with their alternative theory, which was, well, it's possible that these hydraulic arms could have been on the outside, and if they had been on the outside, then the defendants didn't have to grab the inside of the window. They could have just used someone's handles to remove it without grabbing the inside. The victim testimony and the trier of fact made the inference that those arms, those hinges, were on the inside. And when this evidence, when her testimony is viewed in the light most favorable of prosecution, certainly a rational trier of fact can make the inference that those hydraulic arms, those hinges, were on the inside. The appellate court even recognized the significance of that. They cited to two appellate court cases from out of state, and in those cases, those were fingerprints were found on the inside of the window, which proved entry. And the appellate court even quoted from one of them. They quoted from the Birkeland case from Washington, and they observed that fingerprints on the inside of a window pane could not be made without the defendant's hands breaking the plane between the inside and the outside of the building. So the appellate court majority recognized that the only way these defendants didn't enter is if those hydraulic arms are on the outside, because then they wouldn't have to reach inside to grab it. But here, of course, they did. And when this evidence is viewed in the light most favorable of prosecution, the trier of fact made a reasonable inference here. We know that the appellate court heightened the standard of review here. They cited to several cases. The one primary Illinois appellate case they cited was this Davis case. It's from the 5th District from 1972. It predates Jackson by several years. Davis applies no standard of review. It's simply a de novo review. And they reversed based on that de novo review. And there, in fact, it was distinguishable also on the facts. They just poked a hole and did nothing else. Here, the window was removed. They also relied on this Jacob case out of New York. Again, this is a pre-Jackson case. It's from 1977. And in that case, they found that they relied on, and so this is factually similar, this was the standard they applied in Jacob. And this is telling. The Jacob court said, The evidence against the defendant was circumstantial, and we are unable to conclude that the evidence adduced did exclude to a moral certainty every hypothesis but guilt. Again, they relied on this case. It shows that they're heightening the standard of review, and they're relying on these cases. Also, on this Mitchell case out of South Carolina, that was a review of an appeal based on the denial of a defendant's motion for a directed verdict. And in South Carolina, they explained, the court explained in South Carolina, that Mitchell case, in a circumstantial case, the state must present substantial circumstantial evidence which tends to prove guilt. Again, that's above and beyond the Jackson standard. Years ago in Pintos, this court did away with the reasonable hypothesis of innocent standard in circumstantial evidence cases. The Jackson standard applies. All three of these cases that the appellate court majority placed such great weight on, don't apply Jackson. They apply this heightened standard of review. And once this court, and it's again exemplified by the fact the additional testimony that the appellate court majority wanted. They disregarded the inference that the trial court made as far as where those hinges were. They wanted additional testimony about the windows. But again, the victim testified that her SUV was locked, that the lock was in place, that it worked and the window was closed. There are several other appellate court cases where, for instance, reaching into an open truck bed is an entry. Reaching into an engine compartment is entry. And the appellate court again recognized that when you grab the inside of a window, that's an entry. Is there anything in the record to show that they had to reach inside the vehicle to get their hands on the inside of the window? Or was the window, in fact, swung up and out so that it's sticking outside the vehicle? Or is your argument based upon the fact simply that the prints are on the inside and therefore they had to go inside? Or is it that they broke the close, the plane of where the window had been, and they reached inside? Your Honor, there's no evidence as to whether that window opened at all. There's no testimony as to how far it opened. Because, again, there was no one there other than the defendants. There's no direct testimony as to that. But when this evidence is viewed in the light most favorable to the prosecution, the inference certainly is in order for them to get that window off, there's no possible explanation other than the fact that they had to break that close. Because whether it opened or not at all, whether it was entirely closed and they had to get their hands in there somehow, or whether it opened fully, they had to grab it. There was no evidence to show that they entered through the doors of the vehicle. Is that correct? Excuse me, Your Honor? There's no evidence that would indicate they entered through the doors of the vehicle. That's correct, Your Honor. So the only way they could touch the glass, the window, was once that window had been popped. And that's from the outside, isn't it? But that window has an exterior and interior. That interior is part of the interior of the car. No matter what position it was in. Is that your position? Even if it's thrown out to a 90-degree angle, it is still inside the car. That is the interior of the car, Your Honor. If it actually detached fully from the vehicle, it would be a different case. If they punched that lock and it springs off and it's on the ground, that would be a different case. The windows attached each hinge at two different locations, to the car and to the window. Correct. Which attachment was removed? One was on the ground and one was dangling from the frame. So one was still on the vehicle and one was on the ground. They were clearly damaged. The testimony was that they were damaged. The window is not designed. Had the screws been removed at both locations, the part attached to the car and the part attached to the window? There were no testimony about screws, Your Honor. Just that the hinges, those hydraulic arms were damaged. One was on the ground and one was dangling from the vehicle. Still attached to the vehicle. Showing that this window didn't just pop off. They had to grab it. They had to rip it off from its hinges. This was not something easy to do. It's not designed to come off. And there's an inside of that window. And that's what these two appellate court cases that the appellate court cited recognized that if you touch the inside of the vehicle, if you touch that interior of the window, that's an entry. That's an entry. No matter where it is in that plane. That's the inside of the vehicle. Your Honors, again, when this evidence is viewed in the light most favorable to the prosecution, a rational trier of fact could find, and in fact it did find, that these defendants committed burglary. That they entered that vehicle when they punched that lock. They grabbed that window and ripped it from the frame. For these reasons and for those in our briefs, Your Honor, we ask that this court reverse the appellate court and affirm defendants' convictions for burglary. Thank you. Mr. Becker. Good morning, Your Honors. My name is Stephen Becker on behalf of Albert Beauchamp. I plan to spend the first 15 minutes of our time addressing issues one and two. And my colleague, Ms. Ingram, who is representing Mr. Jones, will then address the cross-appeal issue in the last five minutes. And, Mr. Becker, you'll need to keep track of your own time. Thank you. Yes, in responding to the State's argument, I think Justice Burke's example is excellent where you have a screen door that opens up. It's the State's apparent position that anyone stepping within that area would thus be within the close of a home. But that would cause this court to have to make entirely new law. For example, let's say that the police went to a home. Would they have to have a search warrant to stand outside in that arc between the screen door and the front door? I don't think so. I think that's a radical attempt to expand the law. This was a case in which there was no proof that there was physical entry into the vehicle. Here we had a position where the window opened up, it was removed from the outside, and there was no evidence shown by the State that the close was broken. The close is considered to be the four sides of the vehicle and the top and the bottom. Here the State did not provide any evidence. What about the last point, Mr. Becker, that opposing counsel made, just the idea of no rational trier of fact being able to look at the evidence in this case? He was very candid and said there isn't direct evidence, but there's circumstantial evidence. This was a bench trial, right? That's correct. All right, so the trial judge was also the fact finder in the case. Couldn't he draw reasonable inferences from the evidence presented? And could we say that he was not rational in thinking that in taking that window out, the hands went into the vehicle? Yes, you could rule that he was not rational in making that decision because he gave three reasons, and this also goes into the standard of review. This is a question where we're looking at undisputed facts. So this is not something we're looking at as a question of law. It's a question of was entry as an element met under these undisputed facts? Do you take exception with the fact that let's just say the evidence was the defendant took his hands and went on the inside portion of the window and removing the window. I know that wasn't the evidence in this case. Do you take exception that that in and of itself would be enough to have a finding that that would be entry? I do. If the window, as we know in the evidence, was outward from the vehicle, I would say even if he touched the inside of that window with his fingers while he was standing outside, he clearly had not broken the close of the vehicle. That would not be an entry. Similar to Justice Burke's example of the screen door. If the screen door was open and I pulled that screen door and yanked it off the hinges, even though I touched what used to be the interior of that screen door, that clearly would not be an entry. And this, I think, is because – Counsel, may I ask you a question? I'm confused about the record. Yes. Was there evidence that the window was up and out? Yes. From the testimony of Ms. Little, she said that when the lock was punched or when it was not in a locked position, there was a button on the outside that automatically opened the window up. But no one saw the window open. That's correct. The position that you've described, no witness saw that. There's no evidence that punching that lock with some tool would automatically release that lock or completely release the window. There's no evidence to support that, is there? No. Just her testimony that there was a button on the exterior that once it was punched, the window would lift up. And so that's the evidence that we have to work with in the case. So you have to also look at the purpose of the burglary statute, which is clearly not met here with the analysis of the State. That being that burglary, as opposed to theft, was designed, at common law at least, to prevent someone from going inside a dwelling at nighttime and having the possibility of a physical confrontation with someone inside. That now has expanded to protected spaces. But this was a case in which there was absolutely no physical entry into the vehicle whatsoever. And the purpose of the burglary statute is clearly not met here. Also, there was a question about the hydraulic arms. I think Justice Freeman posed as to whether they were still connected to the vehicle. There was no evidence, again shown by the State, that my client went and used an instrument and unscrewed the arms from the interior of the vehicle. Clearly, one of the arms was still dangling, which goes directly against that inference. And again, I would say that at that point could be considered the exterior of the vehicle. But the fact that we had one arm still dangling demonstrates that is not how removal was affected in this case. Is there any evidence as to where that hydraulic arm was? Was it located, the one that was still dangling, inside the vehicle or outside? I'm assuming it was on the outside. There's no evidence, though. I don't know. So you're assuming that, but we don't know. Right. Right. That's correct. Because in order to push it, it would have to be on this side. So I'm assuming that's where it would be in a normal vehicle. But no evidence was produced to that effect. And also there was reference here to the fact that it was ripped from the vehicle. That, again, would demonstrate to my liking that this was outside of the vehicle. One might use another analogy of a close from sports. For example, in football, a team can remain a long time in the red zone, but it's not until they push that football across that imaginary plane or the close that you have a possibility of scoring. And I think in the same way here, there's no evidence that my client ever entered physically inside the vehicle, that he pushed his hand or anything inside the close, which this Court has always defined. I know Mr. Nowak also mentioned some cases, other vehicle cases, one being where an individual had reached in underneath the hood to get a battery, and a second one where an individual reached in to an open bed of a pickup truck. Those, of course, are immediately distinguishable. Those are cases in which the defendant went into any part thereof.  So when the hood was raised and when the defendant physically attempted to extract the battery, that was clearly an entry. May I ask you another question about the close? Yes, sure. There's evidence here that you're suggesting that a button was pushed somehow that released the window, correct? Yes. Was the button on the interior of the car, on the inside of the car? No, it was on the exterior, and that comes specifically from Ms. Little's testimony at trial. So the release button, the testimony was on the outside of the car? That's correct. Yes. And following up on that, do we know from the record that once you pushed the button, the window opened, or did the window just unlock? She said the window, Ms. Little said that the window opened, that once you pressed the button, the arms then pushed the window outward. So that's the testimony we have from the complainant. And if there are no further questions, then I will ask that you affirm the judgment of the Apollo Court, and I will turn over the rest of my time to Ms. Ingram. Thank you very much. Good morning, Your Honors. Again, my name is Amanda Ingram, and I represent Michael Jones. And I would like to just briefly address the cross-appeal issue in this case. There is hardly any evidence pointing to Mr. Jones either as a principal actor or as an actor accountable for the actions of Mr. Beauchamp. The evidence that potentially pointed to Mr. Jones as a principal actor came from a single sentence in Officer Frazier's testimony, in which he said that he saw a white car with two men just got into the vehicle and the driver trying to start the car. The trial court relied on this statement to assume that he had actually seen both men outside of the car and then get into the car. However, when Mr. Officer Frazier's testimony is taken in context, it's clear that that might not be what he saw. Officer Frazier testified that when he went into the parking lot, he looked to the right, and he saw Ms. Little's vehicle with the amber lights flashing, but he didn't see anybody out there. If Mr. Jones and Mr. Beauchamp had actually been standing outside, particularly if Mr. Jones had been standing outside, Mr. Officer Frazier would have said so. And moreover, Ms. Little, when she was at the pay box and looked back at her car, she only saw one man standing outside of her car, and that man was not Mr. Jones. Counsel, aren't you, as far as this point goes, aren't you just asking us to reweigh the trial testimony? No, Your Honor. And say it differently than the trial judge? No. No, I think that this Court may review the facts that the trial court found where they were erroneous in this case. There was reasonable doubt, especially when we're looking at one single bit of testimony that points to Mr. Jones' act of participation. And when that testimony is as ambiguous as this, that does show a reasonable doubt of his act of participation. The appellate court went further and said that even if Mr. Jones wasn't outside of the vehicle, that he was still accountable for the actions of Mr. Beauchamp. But there's even less evidence that Mr. Jones was accountable than there was of his act of participation. There was no evidence that he assisted in the removal of the window. There was no evidence that it was his idea to remove the window. It's not even clear that he knew they were going into the parking lot to remove a window. There's no evidence that he alerted Mr. Beauchamp that the police were there. These two vehicles were the same identical vehicles so that the window from one was interchangeable with the other vehicle? That's not clear at all. I don't think that would be the case. I believe that Mr. Beauchamp and Mr. Jones were in a four-door or maybe a two-door car. I don't believe they were in an SUV like Ms. Little's car was. Does the evidence establish that the victim's vehicle was one that was pointed out and was followed to the parking lot? Well, there was evidence that she was followed. But, again, Mr. Beauchamp was the driver. Beauchamp drove into the parking lot, and he was the one who was going to drive away. And how close was Beauchamp's car to the victim's car? I believe it was right next door, right next to Ms. Little's car. But, again – And the fact that Jones stayed in – assuming that he stayed in the car does not make him a companion to what Jones was doing outside of the car? No, Your Honor, because even if he was in the car, that's simply mere presence, and mere presence is not enough to establish – Any evidence to show that the location of the two cars gave him full view of what Beauchamp was doing? Even if he was in view, for example – in view of what was happening, he's still merely present. That's not enough to establish accountability. In the Third District case of People v. Matthew Taylor, a man was in a car with two of his friends. His friends got out of the car, gathered rocks, and threw rocks over an overpass, and one of those struck a vehicle and led to the death of the driver. The First District – I mean, I'm sorry, the Third District Appellate Court found that the man who stayed in the car wasn't accountable because he didn't participate in the offense, he didn't help gather rocks, it wasn't his idea. There's no reason to make Mr. Jones accountable for the actions of Mr. Beauchamp if all he did was sit in the car. Finally, there was – that there was a very short time frame here, and we have a good-sized window off a vehicle? I mean, it kind of is mind-boggling to think you could – one guy could take it off of that car and put it in the back seat of another car without any assistance from somebody else. Well, Your Honor, there's simply – first of all, the – although the window was large, there's no testimony or evidence about the weight of that window. While the window might be large, there's no reason to think that it might be too heavy for one grown man to handle by himself, especially when there's simply no evidence in this case that points to Mr. Jones' active participation or anything that he did to aid or abet Mr. Beauchamp in the removal of the window. Finally, there was no real attempt to flee here. An attempt to flee must assume that the people who are doing the fleeing know that they are being pursued by the police. Did the police pull up behind the vehicle to block its exit? I believe they were behind them. They weren't in front of them. The police were behind them. I don't know that they were blocking their exit in any way. And the car was registered to whom? To Beauchamp? I don't think the record actually explicitly states who the record – who the car was registered to, but it was definitely driven by Mr. Beauchamp. The point is that there was no – Officer Fraser never testified that he saw either of the defendants look backwards or rush into the car or anything like that. If they had actually really wanted to flee, they probably would have been better off just running away instead of trying to make their way out of a metro parking lot at 10 o'clock in the morning. If there are no further questions, I would just like to conclude for both defendants. Mr. Beauchamp and Mr. Jones asked this court to affirm the finding of the trial court – of the appellate court as to issues one and two, and Mr. Jones asked this court to reverse the finding of the appellate court on the Cross of Hill issue. Thank you. Mr. Nowak, I know you're soon to get back into the whole burglary situation, and I understand your position if we reverse – on the reversal of the burglary conviction by the appellate court that there's no need to go into something that we haven't talked about yet, but I think maybe we should use a little bit of this time to talk about it. Their remedy – the appellate court's remedy was to send it back for sentencing on a theft conviction, right? That's correct. And you take exception with that, too, and again, we wouldn't get to it, but if we disagree with the argument that we've heard so far, do you want to spend just a minute on why it should be a temp burglary? Certainly, Your Honor. The reason why it should be a temp burglary is because there is no question here that the element of intent to commit a theft was satisfied. They stole that window. Couldn't be more clear. They intended to commit a theft. If the only element that's missing is the entry, what we have here is a classic temp burglary. That's what was the appellate court held in the Newell case, and in fact the Davis case on which the appellate court relies so much, that when you have the intent to commit theft clearly satisfied, but it's the element of entry that's missing, the proper remedy is to reduce it to a temp burglary. This contrasts with the Hamilton case that had to do with jury instructions before this Court. There was no question that there was an entry. The defendant was clearly inside. The question there was whether the defendant had the intent before he entered to commit the theft or he had already entered, and once he was inside, he decided, I'm going to commit a theft. And so in that case, it was proper to instruct on a lesser included of theft. If we don't accept your argument that touching the inside of a window that's protruding outside of the vehicle is an entry, why wouldn't we be in the same position if somebody just simply stole an outside rearview mirror off the car? Because with the rearview mirror, Your Honor, there is no interior to the vehicle with that rearview mirror. It's all on the outside. With that window, there's an exterior and an interior, and that interior part is the inside of the car. And to go back to Justice Burke's example that the defense counsel talked about, about the screen door, this isn't like a screen door. With a screen door, there are two differences. Presumably with a screen door, you've got the screen door and then there's an actual solid door. So by opening that screen door, you haven't necessarily entered the building. But second, it's a door. It's got a handle on it. You can actually open that door without touching the inside of the screen door. You can just grab the handle and open it. There was no exterior handle on this window. You had to, the only way you could remove it, it wasn't designed to come off, the only way you could remove it is to grab it with both hands. Justice Burke's example just a little bit, suppose the hard door was fully open, but only the screen door was closed when he arrived and he opens the screen door. Would that change your proposition? Again, here, Your Honor, it's a different fact scenario because there's a screen door and a solid door. Even if that's a solid door, it depends on where you consider the plane. If the plane is the solid door, then there's no entry. But here we don't have that double door scenario. We've got one window. There's no secondary window that may or may not be open. This is it. This is that solid door. This is that window. But unlike a screen door, there's no handle that you can just remove it without touching the inside, which was Justice Garcia's point exactly in the dissent. You can't remove or open that rear window with a handle. There is no handle. The only way you can do it is to grab it and you rip it off. And as far as defense counsel talked about, there was no testimony that he used a screwdriver. Do we know that for sure that there was no handle on the back of the SUV on the window? It's a reasonable inference, Your Honor, because the witness testified that the only way when it's operating normally is that you unlock it and you press, that is you press in that button, and that releases the window to go up. But does that exclude the fact that there might be a handle on the window? I believe it does because, I mean, the fact that the way the button works is you press it and that allows the window to raise up with the hydraulic arms, that doesn't need a handle in order to pull it off. And in order to- Excuse me. Aren't there vehicles that do have both of those items, the hydraulic opening the window and also a handle? It's not on the record, Your Honor. But, again, based on the evidence here, when it's viewed in the light most favorable to prosecution, the question is, is this a reasonable inference?  Was it testified that there was a handle on the glass? There is no testimony as to the handle, Your Honor, just about the lock. And as far, back to that screwdriver example, if he had actually unscrewed it from the outside, then possibly it falls off without actually entering the vehicle. But here, if there's no screwdriver, these hinges are damaged. Clearly he ripped it off with some force, these defendants. Now, as to the Jones argument as far as whether he was guilty as a principal or by accountability, the trial court found both. And the appellate court actually agreed. This defendant, Jones, was guilty as a principal and even in the alternative as accountability. Officer Frazier, and this cannot be ignored, although a defendant tries to, he saw both those defendants outside that vehicle when he arrived in his marked squad car with the sirens blaring. He testified when asked what he saw when he arrived as follows. He said there was a white car with two men just got into the vehicle and the driver was trying to start the car. Just got into the vehicle. The reasonable inference that the trial court made by just got in means they got into the vehicle moments earlier. And the only way the officer knows that is because he actually saw them outside the vehicle. That's how he knows they just got in. If he arrived on the scene and the two defendants were already in the car, he wouldn't have said they just got in. He'd say they were in the car and he'd leave it at that. Just got into the car. And when you review that testimony in the light most favorable to the prosecution, it's clear that the rational trier of fact could find that both these defendants were outside. They were both actively participating. But as for the accountability argument, again, you can't ignore the fact that this defendant, Jones, was outside the vehicle. He arrived on the scene with Beauchamp in the same car, tailed the victim's SUV into the metro parking lot. She left. Between her leaving and the police arriving, the two defendants had an opportunity to punch that lock, forcibly remove that window, and stash it in the back of their white waiting car, which is adjacent, the testimony from Officer Frazier, adjacent to the victim's SUV. It's a large window. The trial court made a reasonable inference that it's a large rear window to an SUV, not a small car. It would take two men in order to get that in the back of the vehicle. And again, when the officer arrived, he did not try to disassociate himself. He jumped back in the car with Beauchamp. Beauchamp was frantically trying to start the car, but he couldn't get it started by the time Officer Frazier pulled her right up next to the driver's side, preventing the driver, Beauchamp, from fleeing. Here, even if Jones didn't actually punch the lock, we know he was outside the vehicle. He was with Beauchamp at the start, in the middle, in the end. He never disassociated himself. This defendant was guilty as a principal, and he was guilty by way of accountability. And again, Your Honors, when that issue is viewed in the light most favorable to the prosecution, and when the burglary issue is viewed in the light most favorable to the prosecution, a rational trier of fact could find, and in fact did find, these defendants guilty of burglary. For these reasons and those in our briefs, Your Honor, we ask that this Court affirm defendant's convictions for burglary. Thank you. Case number 108-335, consolidated with case number 180-350, People v. Beauchamp is taken under advisement.